MISSOURI LOAN BANK, Respondent, *vs.* JOHN HOW AND GILES
F. FILLEY, Appellants.

1. *Corporations—Mo. Ben. & Loan Ass'n—Loans by—Pledge of goods and chattels,
   etc.*—Under its charter (Sess. Acts 1865, p. 252), the Missouri Benevolent and
   Loan Association had authority to make loans upon personal security without,
   joining therewith the pledge of goods and chattels as further security for the
   re-payment of the money loaned.

*Appeal from St. Louis Circuit Court.*

*Glover & Shepley and W. C. Jones and J. D. Johnson*
for Appellants.

*C. M. Napton,* for Respondent.

VORIES, Judge, delivered the opinion of the court.

This action was brought on a negotiable promissory note
which is charged to have been executed by the defendant,
How, for the payment to defendant, Filley, of the sum of four
thousand dollars, ninety days after date, and which was, before
the maturity thereof, indorsed and transferred by said Fil-
ley to plaintiff for value.

The action is against the maker and indorser, and the peti-
tion is in the usual form.

The defendant, Giles F. Filley, by way of defense to the
action, states in his answer to the petition, that by the charter
of plaintiff's corporation, the plaintiff has no power to loan
money except upon personal security and the pledge of goods
and chattels ; that the note sued on was made for no other or
further consideration than the loan of four thousand dollars
by the plaintiff to the defendant, John How, and that de-
fendant, Filley, received no part of the consideration for
which the note was executed, but only indorsed said note for
the accommodation of said How, and for no other considera-
tion whatever ; that said loan was made by plaintiffs without
any pledge of goods or chattels to secure the same, and that
said loan was contrary to the charter of said corporation, and
without any legal power or authority to make the same, and
that said contract and promissory note were and are illegal
and void.

The plaintiff demurred to the answer on the ground that it does not state facts sufficient to constitute a defense to the action, and that the answer assumes an incorrect construction of the charter of plaintiff, and that, if the construction was right, it is no defense to the action.

This demurrer was sustained by the St. Louis Circuit Court at Special Term.

It was agreed on the hearing of the demurrer, by the parties to the action, that the charter of the plaintiff is contained in the "Act to establish the Missouri Benevolent and Loan Association," approved February 20th, 1865 (Sess. Acts of 1865, page 252), and that the name of said corporation was changed to that of "The Missouri Loan Bank," and that said charter should be considered as a part of the plaintiff's petition as fully as if the same were set forth therein ; and the same was so considered by the court in considering and passing on the demurrer to the defendant's answers.

The defendant at the time excepted to the action of the court in sustaining said demurrer.

The defendant declining further to answer the petition, final judgment was rendered in favor of plaintiff for the amount of the note with legal interest.   From this judgment the defendant appealed to the general term of the St. Louis Circuit Court, where the judgment rendered at special term was in all things affirmed : and from this judgment the defendant, Filley, appealed to this court.

It is insisted by the defendant, that the plaintiff by virtue of its charter only had a limited power to loan money, and that all contracts for the loan of money attempted to be made by the plaintiff, where not made in the particular manner designated in the charter, were unauthorized and void, and that the contract of loan for which the note sued on was executed, not having been secured by a pledge of goods and chattels, was and is therefore unauthorized and void.

It is provided by the first section of the act or charter incorporating plaintiff, that "the association hereby created shall have the power to loan money upon personal security and the

pledge of goods and chattels, by such agencies and established offices as the public business and requirements demand, subject to the restrictions and limitations in this act prescribed."

The second section provides that, "all loans by this association or its agencies shall be for a period of time not exceeding one year, the time to be at the choice of the person borrowing. Books shall be kept in which shall be entered the name of the borrower, amount of the loan, the time and terms of such loan and a description of the property pledged therefor. Whenever a sale shall take place of any pledged property, the same shall be entered on the books with the amount of the sale and costs and expenses of the same, showing in a clear and satisfactory manner the transactions, and the overplus if any, and such overplus shall be retained for one year and paid to the party borrowing, or his or her legal representatives. And if not demanded within that period, shall be carried to profit and loss, to be disposed of as hereinafter provided, unless the association may, in special cases, make any proper order to pay the same over to the borrower."

The 4th section provides that, "the amount of interest on loans shall not exceed eighteen per cent. per annum, to be disposed of as follows, viz: If the interest reaches eighteen per cent. after deducting the amount of costs and expenses attending the transaction, two per cent. shall be set apart, and if it reaches fifteen per cent. per annum after such deduction, one per cent. thereof shall be set apart, and the amount of such deductions shall be paid into the State Treasury on the first of January of each year for the support of the indigent insane at Fulton and St. Louis City Hospital, in equal parts. And one-half of the overplus as mentioned in the second section of this act, shall at the end of every period of five years, be paid into the State Treasury for the same purposes," &c.

The 5th section provides, that the corporation created shall be exempt from the operation of the 4th, 18th and 20th sections of the general act of corporation, approved November, 23d, 1855.

The 10th section requires the corporation and all of its agencies to pay into the State Treasury in semi-annual payments, one per cent. per annum of all its net earnings for the use and benefit of the Soldiers' Orphan's Home Fund.

The first, and I think the only question necessary to be considered by this court is, whether the plaintiff, by virtue of its charter, has the power or authority to make loans of money upon personal security, without joining therewith the pledge of goods and chattels as further security for the payment of the money loaned? While it is admitted that corporations have no powers but such as are specifically granted or such as are necessary, by fair intendment, to the complete exercise and enjoyment of the powers granted by their charters, yet we cannot say that the plaintiff under its charter had no power to loan money upon personal security. It is true, that where the language used by the legislature is plain, admitting of but one construction, and the natural and usual construction of the language used is consistent with the scope and object of the whole act, the natural and usual construction of the language ought to prevail. The language conferring power on this corporation to loan money is, that "The Association hereby created shall have power to loan money upon personal security and the pledge of goods and chattels." I think that the most natural construction of this language is, when we take into consideration the objects and purposes of the creation of the corporation, that the association shall have power to loan money upon personal security, and shall have power to loan money upon the pledge of goods and chattels. It certainly could not have been intended by the Legislature that a loan of money upon personal security should be void, but that if the personal security given for the sum of ten thousand dollars should be accompanied with the pledge of ten cents' worth of goods and chattels, the loan would thereby become valid.

It is, however, contended by the defendant that the second section of the charter is entirely inconsistent with the idea that the corporation should have power to loan money on personal security only; that said section provides that all loans shall be

for a period of time not exceeding one year, the time being at the choice of the person borrowing; that books shall be kept in which shall be entered the name of the borrower, amount of the loan, the time and terms of the loan, and a description of the property pledged. It is asked how a description of the property pledged could be given if none was pledged? The fair construction of this section is, that a fair and full account of each transaction shall be entered on the books of the Company, and if we refer to the fourth section of the act we will readily see the object of the legislature in requiring these transactions to be truly and fully entered on the books. It is there provided, that when the interest on loans reach eighteen per cent. after deducting the amount of costs and expenses attending the transaction, two per cent. shall be set apart, and if it should reach fifteen per cent. per annum, one per cent. thereof shall be set apart, and the said amounts so set apart, shall be paid into the State Treasury for the support of the indigent insane of Fulton and St. Louis City Hospital in equal parts, and that if there is any overplus left, as is mentioned in the second section of the act, from the sale of property pledged, one-half shall be paid into the State Treasury for the uses aforesaid. And it is further provided by the tenth section of the act, that one per cent. of the entire net earnings of the Company shall be paid into the State Treasury for the use of the Soldiers Orphan's Home Fund. When these provisions of the charter are taken into consideration, the reason for requiring all transactions to be fully entered in the books to be kept by the Company becomes apparent. The object in requiring these entries to be made in all cases of a loan was to insure a full and complete history of the transaction to be entered, and that in all cases where personal property was pledged, a description of the property should be given.

It is further contended by the defendant, that the legislature never could have intended to authorize this Company to loan money at 18 per cent. on mere personal security like other banking institutions in the State, and to charge eighteen

per cent. interest thereon, while all other banks in the State were limited to a much less amount of interest; that it would be unjust to other banks to give this institution that advantage. This objection is also answered by the provisions in sections four and ten above referred to. This corporation was required to keep an account of every transaction for the purpose of ascertaining the per cent. which it was bound to pay into the State Treasury of its entire earnings. And no matter how much or how little was made, it was bound to pay into the State Treasury one per cent. of its net earnings, and if it should make as much as eighteen per cent. on its loans, at least three per cent. was to be paid into the Treasury of the State. So that it appears that it was anticipated by the legislature that part of the profits of the institution would be paid into the State Treasury, and however delusive the idea might be, that the corporation would loan money for eighteen per cent. merely for the purpose of paying two per cent. thereof into the State Treasury, it operated as one of the incentives to induce the Legislature to grant extraordinary privileges to this institution. I do not, therefore, think that the privilege given to this institution to charge eighteen per cent. on loans, under the circumstances, was at all inconsistent with the construction given to the charter by the Circuit Court.

The language of the charter is that the corporation shall have power to loan money upon personal security, and the pledge of goods and chattels. Now it is well understood that the word "goods" in its ordinary acceptation, does not include everything comprehended in the more general word "chattels;' but I suppose that no one would contend that the words "goods and chattels," as used in the charter of plaintiff, would restrict the plaintiff to such loans as were secured by the pledge of chattels with which some articles or chattels should be combined, coming within the usual meaning or designation of "goods." The word "and" as used in that case, must have the same meaning as the word "or;" and the phrase would be construed exactly the same way, no matter which of the words, "and" or "or," was used.

While I agree, that the powers given to a corporation should be strictly construed so as to effect the objects of its creation, yet the construction must not be·so strict or technical as to defeat the evident objects and purposes of its creation.

The case of the "North River Insurance Company vs. Lawrence, 3 Wendell, 482," so much relied on by the defendant, I do not think is in point, in considering the case under consideration. There the language giving power to make the contract then in question was, "and also to make loans of the capital stock funds or monies on bonds and mortgages."

The plain meaning, as well as the general and common understanding of the terms, as used in that case, was that the power conferred, was to loan money on bonds secured by mortgage on property. The court did right in construing the language in conformity with ordinary meaning. It must also be taken into consideration that in the charter of the corporation being considered in that case, the corporation was expressly prohibited from using or employing any part of its stock or funds in buying or selling any goods or merchandise, or in purchasing or discounting of any bill, bond, note or obligation whatever, or performing any other banking operation. Those prohibitory words in the charter, when taken in connection with the words authorizing the loan on bonds and mortgages, precluded any other construction of the charter than that given by the court, and the same thing may be said in reference to other decisions referred to. In the case which we are now considering, it will be seen· that by the 5th section of the charter of the plaintiff, the plaintiff is exempted from the operation of the 4th, 18th, and 20th sections of the General Act of Incorporation of 1855.

The fourth section of the general act from which plaintiff is exempted, provides, that "No corporation created or to be created, and not expressly incorporated for banking purposes, shall by any implication or construction, be deemed to possess the power of discounting notes, bills, or evidences of debt."

' The legislature must have had some object in repealing this fourth section of the general statute so far as its applica-

bility to the plaintiff is concerned, and this must be taken into consideration when construing other parts of the charter of the plaintiff. Taking all things into consideration we think the judgment of the Circuit Court is right. With the view already taken of this case, it becomes unnecessary to pass upon the question of estoppel and other questions raised upon the argument of the case.

The judgment of the Circuit Court will be affirmed. Judge Napton having been of counsel in the case did not sit; Judge Sherwood absent, the other judges concur.